**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBORAH BASILIKO**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:08cv372 |
| | ) | Electronic Filing |
| **VOCELLI PIZZA, L.P.**, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

On March 31, 2010, an order was entered granting defendant's motion for summary judgment in part and denying it in part. The motion was granted as to plaintiff's claim for retaliation under the Family and Medical Leave Act and plaintiff's claim for violations under the Pennsylvania Wage Payment and Collection Law. The motion was denied in all other aspects. This memorandum is issued in support of that order.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita

Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992).  Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below.  Plaintiff was hired by defendant, Vocelli Pizza, in January of 2005 as a "fast track" general manager.  On April 4, 2005, plaintiff was promoted to general manager of the Vocelli store in Mt. Lebanon, Pennsylvania.  Plaintiff worked as a general manager until September of 2005 when she was promoted to Director of Training.  Because of personal reasons, plaintiff requested a demotion on January 23, 2006.  Defendant approved the request and assigned plaintiff to the general manager position of the Scott Township store as well as the Corporate Training Manager for training franchisees.

Sometime in September of 2006, plaintiff was granted medical leave to undergo knee surgery.  She also "borrowed" two vacation days from 2007 to be part of her leave.  Plaintiff

was on medical leave until October 31, 2006.  During that time defendant transferred the franchise training duties to the Mt. Lebanon store.  Defendant allegedly transferred these duties in response to declining sales at the Scott Township store.  Specifically, sales revenue in 2006 dropped by 10% in comparison to 2005.  The gross sales were also substantially lower than those at the Mt. Lebanon store.[1]  When her leave ended, plaintiff returned to her previous general manager position with the same salary except for the $50 bonus awarded for each trained franchise.

After plaintiff returned to work, she met with Varol Ablak, an owner of defendant.  Ablok introduced plaintiff to an attorney.  During this introduction Ablak told the attorney that plaintiff used to be responsible for training franchisees before she went on leave under the Family and Medical Leave Act ("FMLA").

In January of 2007, plaintiff planned to take her assistant managers, Carrie Bethel and Chad Colvin, to dinner to celebrate the retirement of Rick Krouse, another Vocelli's employee.  The dinner was to take place on January 18, 2007.  Lisa Takash, an assistant manager from the Bethel Park store, was scheduled to work that night as an assistant manager for the Scott Township store.  Jovon Belcher, a driver from another store, also was scheduled to work that night for the Scott Township store.  In addition to Takash and Belcher, Colvin was scheduled as the opening driver and Bethel was scheduled as the opening manager.  The schedule for that week was approved by the District Supervisor, Wes Hileman.[2]

At about 3:00 p.m. on January18, 2007, Bethel left work to go to the dinner.  Around that same time one of the drivers for the dinner shift called off.  Colvin and Takash unsuccessfully attempted to find a replacement driver.[3]  At 5:00 p.m., Colvin's shift ended and

---

[1]In 2006, the Scott Township store had $398,673 in gross sales while the Mt. Lebanon store had $602,197 in gross sales.

[2]As district supervisor Hileman approved all of plaintiff's schedules on a weekly basis making any changes he felt were necessary.

[3]Plaintiff contends that she confirmed that another delivery driver, Christian Ablak, was available to the Scott Township store, but Takash refused the offered assistance at 7:00 p.m.

he left the store to attend the dinner.  Subsequently, delivery delays began to accumulate, and Takash sent Bethal a text message requesting her help.[4]  Takash did not receive a response from Bethel and decided to call Hileman.  Hileman called Colvin and told him to return to work.  Colvin informed plaintiff of the situation, and she told him to handle it and then come to dinner.

After talking to Colvin, plaintiff called Takash to discuss the situation.  Takash stated that everything was fine and there were just some delivery delays.  Plaintiff then told her to send Colvin to the dinner after things calmed down.  Plaintiff further told Takash that Colvin would do his "cash out" after dinner.

Following the conversation between plaintiff and Takash, the situation at the store worsened.  In response, Takash called Allen Caldwell, Hileman's direct supervisor.  Caldwell called Hileman and Hileman in turn called plaintiff.

Plaintiff did not receive Hileman's call because his number was not programmed into her phone,  but he left a message on her voicemail.  Caldwell had instructed plaintiff to contact him with problems instead of Hileman.  Caldwell made this offer because of plaintiff's past complaints against Hileman.  At one point, plaintiff had even requested to be transferred from Hileman's supervision.

Plaintiff received the voicemail and called the store immediately.[5]  Once again she spoke with Takash about the situation.  According to plaintiff, Takash explained that the store was busy but everything essentially was fine.  Plaintiff then called Caldwell and informed him that the problem was resolved.  Later that night, Colvin returned to the store to cash out.

The next day (January 19, 2007), Caldwell told Dorothy Lyons, Director of Human Resources, and Hart Boesel, Director of Operations, about the situation.  Lyons began an immediate investigation.  During the next two days (Friday and Saturday, January 19 and 20,

---

[4]Plaintiff's number was allegedly posted in the store, but Takash did not contact her.

[5]Although Hileman also called Bethel and Colvin, Krouse told them not answer the call because plaintiff was calling the store to address the issue.

2007) Lyons spoke with Hileman and Takash.  She did not communicate with Colvin and Bethel until after Monday, January 22, 2007.  Plaintiff was not available because she was ill.

On January 22, 2007, plaintiff was directed to attend a meeting with Lyons, Hileman, and Caldwell.  At the meeting, Caldwell handed plaintiff a notice of termination that was prepared beforehand.  The termination documents were dispensed in the presence of Hileman who left immediately thereafter.  Plaintiff attempted to explain the situation and asserted that the information in the termination documents was incorrect.  After the meeting, plaintiff provided a written statement that contained additional information about the night of January 18.  Nevertheless, plaintiff was the informed by the Director of Operations Hart Boesel that no investigation would be conducted.

At the time of her termination, plaintiff was the only female general manager that reported to Hileman.  Defendant filled plaintiff's position with a male.  Plaintiff claims Caldwell essentially indicated  the termination decision ultimately was made by Wes Hileman.

Plaintiff filed the present action alleging that defendant retaliated against her for taking an approved leave under the FMLA (Count I), discriminated against her based on gender in violation of Title VII of the Civil Rights Act (Count II) and the Pennsylvania Human Relations Act (Count III), and violated the Pennsylvania Wage Payment and Collection Law by refusing to pay sums due for plaintiff's vacation and sick pay (Count IV).  Defendant moves for summary judgment on all counts.

In its motion defendant maintains that it terminated plaintiff for legitimate business reasons.  It asserts that plaintiff has failed to establish a prima facia case, and cannot point to evidence raising an inference of gender discrimination.  Furthermore, plaintiff cannot refute defendant's business reasons for transferring the training operations to another location or show that she did not receive all of her wages.

Plaintiff contends that there are genuine issues of material fact in dispute on her discrimination claims and when the record is read in the light most favorable to her, she has met her burden to show defendant's proffered explanations are a pretext for unlawful

discrimination.[6]

Plaintiff's claims for gender discrimination survive defendant's motion by the thinnest of reeds.  She has failed to advance sufficient evidence to support her FMLA claim.

It is well-settled that claims of discrimination based on circumstantial evidence are to be evaluated at summary judgment using the shifting burdens of proof initially established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  St. Mary Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Waldron v. SL Industries, Inc., 56 F.3d 491, 495 (3d Cir. 1995) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  Under this framework the parties' respective evidentiary burdens have been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981) (citation omitted).

Under the indirect evidence approach a plaintiff must present a prima facie case of discrimination.  Keller, 130 F.3d at 1108.  The major purpose of the prima facie case is to eliminate the most obvious lawful explanations for the defendant's adverse employment action and raise a presumptive inference of discrimination.  Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 (3d Cir. 1999) (citing Burdine, 450 U.S. at 253-54 ("[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection.")).  A prima facie case raises an inference of discrimination because the presumed circumstances, if left unexplained, indicate it is likely that the defendant's actions were based on consideration of impermissible factors.  Id. (quoting Furnco

---

[6]Plaintiff concedes that summary judgement is appropriate on her WPCL claim.

Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)).

There is no talismanic formula for presenting a prima facie case.  Jones v. School
District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a prima facie case
depend on the facts of the particular case").  The relevant inquiry is whether the plaintiff has
suffered an adverse employment action under circumstances which raise an inference of
unlawful discrimination.  Waldron, 56 F.3d at 494.  Plaintiff's burden at this step is "minimal"
and is viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light
of common experience as it bears on the critical question of discrimination.  Id.; see also
Furnco, 438 U.S. at 577.

If the plaintiff presents a prima facie case, the second stage of the McDonnell Douglas
paradigm requires the defendant to articulate a legitimate explanation for the adverse
employment action.  Keller, 130 F.3d at 1108.  The defendant's burden at this step is one of
production, not persuasion, and the court's consideration of it "can involve no credibility
assessment."  St. Mary's Honor Center, 509 U.S. at 509.  If the defendant meets this burden,
the presumption of discrimination created by the prima facie case "drops" from the case.  St.
Mary's Honor Center, 509 U.S. at 511; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S.
133, 143 (2000).

Once the defendant has met its burden of production and provided a legitimate
explanation for its adverse employment action, the court's analysis turns to the third and final
step of the inquiry, which is usually the most critical  in resolving a motion for summary
judgment.  Jones, 198 F.3d at 410.  At this juncture the plaintiff must be afforded the
"opportunity to [present evidence that is sufficient to] prove by a preponderance of the
evidence that the legitimate reasons offered by the defendant were not its true reasons, but were
a pretext for discrimination."  Burdine, 450 U.S. at 253.  At trial, the plaintiff must have
evidence that could convince the finder of fact "both that the [defendant's] reason was false,
and that discrimination was the real reason."  St. Mary's Honor Center, 509 U.S. at 515.  This
is because while the burden of production under the McDonnell Douglas analysis shifts, "the
ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

- 7 -

against the plaintiff remains at all times with the plaintiff." Jones, 198 F.3d at 410 (quoting Burdine, 450 U.S. at 252-53 (1981)).

In general, a plaintiff may establish a prime facie case by demonstrating that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) the circumstances raise an inference of discrimination, such as where similarly situated individuals outside the protected class were treated more favorably. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc), cert. denied, 521 U.S. 1129 (1997) (discussing nature and purpose of prima facie case). The central focus of the inquiry is always whether the employee is being treated less favorably because of race, religion, sex or national origin. Pivirotto, 191 F.3d at 352 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)). The plaintiff ultimately must be able to produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." Id. at 355. (quoting O'Connor v. Consolidated Coin Caterer's Corp., 517 U.S. 308, 312 (1996)).

Here, plaintiff has advanced a prima facie case for sex discrimination. Plaintiff is a female and therefore is a member of a protected class. She was also qualified for the general manager position that she held prior to her termination. Plaintiff was hired as a "fast-track" manager, and was quickly promoted to a general manager and then to Director of Training. Plaintiff only was demoted back to general manager because she requested it. Despite plaintiff's self-demotion, defendant still assigned her the additional responsibilities of training franchisees. Defendant's actions more than adequately show that plaintiff was a competent employee with valuable skills. Because she was fired, plaintiff suffered an adverse employment action.

As to the fourth and final prong of the prima facie case, defendant contends that plaintiff has failed to show that similarly situated males were treated more favorably, and asserts that being replaced by a male, standing alone, is not sufficient. This argument is unavailing.

The controlling precedent has long recognized that the fourth element of a prima facie case in a wrongful termination case generally can be satisfied by proof that the plaintiff was replaced by a member outside the protected class, such as a member of the opposite gender or a different race. The United States Court of Appears for the Third Circuit sitting *en banc* in Sheridan has so recognized, and we are not a liberty to simply choose to ignore the import of such precedent. See Sheridan, 100 F.3d at 1066 n. 5; accord Torre v. Casio, Inc., 42 F.3d 825, 830-31 (3d Cir. 1994) (observing historical development of circuit precedent on fourth element of prima facie case and the contextual approach that consistently has been employed). Consequently, plaintiff has met the minimal burden of establishing a prima facie case.

Moreover, the context also supports the finding of a prima facie case. It is undisputed that plaintiff and her direct supervisor Hileman had a tumultuous relationship. Plaintiff continually complained that Hileman mistreated her, and the problems between the two eventually led to Caldwell intervening and instructing plaintiff to contact him directly instead of Hileman about work-related issues. However, Hileman was never removed as plaintiff's direct supervisor nor was any type of disciplinary action taken against Hileman. It is also alleged that Hileman played a prominent role in the decision to terminate plaintiff's employment. At the time of her termination, plaintiff was the only female general manger under Hileman's supervision; all others were male. Thus, it is reasonable to conclude that the other *male* general managers had a better rapport with Hileman and were treated more favorably. Consequently, the context adds further support to the proposition that plaintiff's replacement by a male presents a prime facie case of gender discrimination.

Defendant has shown that there was a legitimate, non-discriminatory reason for firing plaintiff. It points to low sales at the franchise store plaintiff managed. Plaintiff was the general manager of the Scott Township store in 2006. Compared to 2005, the store suffered a 10% loss in sales in 2006, and the other stores, particularly the Mt. Lebanon store, performed substantially better. Defendant further asserts that plaintiff's conduct on the night of January 18, 2007 was an unacceptable response to a continually worsening work situation, and that plaintiff had failed to show any effort toward changing her behavior and rectifying the

situation.  Defendant has therefore identified a non-discriminatory business reason for its decision.

The burden now shifts to plaintiff to show that defendant's reasons for terminating her were a pretext for sex discrimination.  The United States Court of Appeals for the Third Circuit has summarized the plaintiff's burden at summary judgment on the third step of the McDonnell Douglas tripartite analysis as follows:

> Specifically, in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), and later in Sheridan [E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc)], we stated that a plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing "to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer action."  Fuentes, 32 F.3d at 764; Sheridan, 100 F.3d at 1067.

Jones v. School District of Philadelphia, 198 F.3d 403, 412-13 (3d Cir. 1999).  Under the first approach, the finder of fact's rejection of the defendant's proffered explanation allows, but does not compel, a finding of discrimination and judgment for the plaintiff.  Sheridan, 100 F.3d at 1061; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").  In other words, once a defendant's justification has been discredited, a jury is entitled to infer that discrimination is the most likely alternative explanation, particularly because the defendant is in the best position to explain the actual reason for its decision.  Reeves, 530 U.S. at 147.  "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id. at 148; Sheridan, 100 F.3d at 1061 (same).

"To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd,

- 10 -

prudent, or competent." <u>Fuentes</u>, 32 F.3d at 765.  Instead, the plaintiff must come forward with evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder <u>could</u> rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Id</u>. (citations omitted).  In meeting this burden the plaintiff need not cast doubt on every explanation advanced by the defendant, but rather is only required to present sufficient evidence from which a factfinder reasonably could infer that each of the employer's proffered non-discriminatory reasons is unworthy of credence. <u>Id</u>. at 764.  For example, "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." <u>Id</u>. at 764 n. 7. "That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." <u>Id</u>.

A plaintiff also may survive summary judgment at the third stage of the <u>McDonnell Douglas</u> analysis by identifying evidence which would permit the finder of fact to infer that invidious discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  "For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." <u>Simpson v. Kay Jewelers</u>, 142 F.3d 639, 645 (3d Cir. 1998).  In making this demonstration, the plaintiff "cannot selectively choose a comparator" amid a sea of employees who are otherwise treated equally with the plaintiff, but instead must point to evidence that is probative of unequal treatment motivated by discriminatory animus.  <u>Id</u>. at 645-647.

Here, plaintiff has provided sufficient evidence from which the factfinder could rationally infer that defendant did not act for the asserted non-discriminatory reasons.  After the January 18, 2007 incident, Lyons conducted an investigation.  However, she did not obtain

statements from plaintiff or her two assistant managers until after plaintiff's termination. Although plaintiff was given the opportunity to explain the situation at the Monday meeting, plaintiff's termination papers had been filled out beforehand.  Plaintiff also was told that there would be no further investigation of the incident that led to her termination.

These facts cast substantial doubt on defendant's asserted reasons for terminating plaintiff.  The finder of fact could conclude that those involved in the decision had seized on an opportunity to terminate plaintiff because they had their minds made up even before they talked to all individuals involved and investigated the situation by taking into consideration the separate accounts of what happened by all of those who were present.  Specifically, the finder of fact could conclude that the decision to terminate plaintiff was made without even hearing plaintiff, Colvin and Bethal's version of what had transpired on the evening of January 18, 2007, or investigating any discrepancies between their accounts and those given by Takash and Hileman.  The inferences raised by a finding that defendant's officers rushed to judgement when coupled with the ongoing animosity between Hileman and his only female store manager and plaintiff being replaced by a male are sufficient to permit a finding of pretext.  As a result, a factfinder could reasonably find that the defendant's reasons for firing plaintiff lack credibility and that decision was based on discriminatory reasons.  Accordingly, plaintiff has satisfied the <u>McDonnell Douglas</u> tripartite analysis at this juncture, and defendant's motion for summary judgment on the gender discrimination claims under Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act (PHRA) properly has been denied.

Defendant's motion for summary judgment on plaintiff's FMLA claim stands on different footing.  According to plaintiff, defendant allegedly transferred the franchise training duties to the Mt. Lebanon store because she took medical leave.  Plaintiff bases this claim on the fact that the duties were transferred during her leave, and, upon her return, Ablak introduced her to an attorney stating that plaintiff used to be responsible for training franchisees before she went on leave.

In order to demonstrate a prima facie case of retaliation under the FMLA, a plaintiff must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision,

and (3) the adverse decision was causally related to his leave." Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004). Plaintiff's ability to establish the first two elements is not in dispute. With respect to the final element, the Third Circuit has stated that under certain circumstances temporal proximity alone can be sufficient to establish an inference of causation between the adverse action and the employee's leave. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000); see also Sabbrese v. Lowe's Home Centers, Inc., 320 F. Supp.2d 311, 323 (W.D. Pa. 2004) (listing Third Circuit decisions discussing temporal proximity). A cautious approach is to be used in conducting this inquiry and the facts and circumstances of each case are to be evaluated carefully. Id. In this regard "the relative evidentiary impact of temporal evidence may vary depending upon the stage of the McDonnell Douglas proof analysis, and the procedural circumstances." Id.

Here, plaintiff took leave to undergo knee surgery. Upon her return, she discovered that her training duties had been transferred to another store. As a result, plaintiff was stripped of an additional income. Therefore, plaintiff took FMLA leave and suffered an adverse employment action upon her return.

As to whether the adverse action was causally related to the protected leave, plaintiff relies on the temporal proximity of the adverse action. The timing of defendant's decision does in fact weigh heavily in plaintiff's favor. The employment action occurred during the protected leave, and prior to her leave, plaintiff was not informed about any other reason that could result in her being stripped of the franchise training duties. Thus, an inference is raised that plaintiff's protected leave was the main reason that her franchise training duties were transferred. Consequently, plaintiff has shown a prima facie case of retaliation.

Defendant has shown a legitimate reason for transferring the franchise training duties to the Mt. Lebanon store. Defendant contends that the training duties were transferred to a store that had a higher volume of sales, which in turn provided a more appropriate training environment. The sales at plaintiff's store had dropped by 10% in 2006, and the Mt. Lebanon store had significantly outperformed the Scott Township store by producing about $200,000 more in gross sales annually. A number of franchise trainees who went through training at the

- 13 -

Scott Township store had complained to defendant that the training did not expose them to the demands of a high-volume store and did not prepare them to deal with the demands of their franchise location.  Based on these facts, defendant had a legitimate reason to transfer the training duties to the Mt. Lebanon store.

Plaintiff has failed to proffer sufficient evidence to permit a finding that defendant's reasons were a pretext for retaliation.  Given that defendant has advanced a well-grounded explanation, the timing of the adverse employment action alone is insufficient to rebut defendant's reasons for transferring the training duties.  The only other evidence offered by plaintiff is the conversation with Ablak and an attorney after her leave.  Plaintiff's recollection of the conversation is less than clear, and the only culpable aspect of it purportedly was a statement to the effect that plaintiff used to be responsible for training new franchise managers before she went on leave.  This statement reflects nothing more than an accurate factual account of what had occurred.  Even when coupled with the timing of the transfer, this conversation fails to provide sufficient evidence to permit the trier of fact to find that defendant's reasons are a pretext for retaliatory conduct.  Accordingly, summary judgment properly has been granted in favor of defendant on this claim.

Date: May 12, 2010

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Adam K. Hobaugh, Esquire
       Murtagh & Cahill
       110 Swinderman Road
       Wexford , PA 15090

       Joel S. Sansone, Esquire
       Scanlon & Sansone
       428 Forbes Avenue
       2300 Lawyers Building
       Pittsburgh, PA 15219

Gregory A. Miller, Esquire
Erin J. McLaughlin, Esquire
Buchanan Ingersoll & Rooney PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219